UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILD WILLY'S HOLDING COMPANY, INC., <br><br> Plaintiff <br><br> v. <br><br> WILLIAM PALLADINO d/b/a THE POTTING SHED RESTAURANT and K.B. ENTERPRISES INC., <br><br> Defendants | Civil No. 06-111-P-C |

Gene Carter, Senior District Judge

**MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Now before the Court is Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction pursuant to Rule 65 (Docket Item No. 9). Plaintiffs' Amended Complaint asserts claims for federal trademark infringement 15 U.S.C. § 1114 (Count I), state trademark infringement, 10 M.R.S.A. §§ 1530, 1532 (Count II), federal unfair competition, 15 U.S.C. § 1125(a) (Count III), state unfair competition/deceptive trade practices, 10 M.R.S.A. § 1212 (Count IV), and state dilution, 10 M.R.S.A. § 1530 (Count V). Amended Complaint (Docket Item No. 15). In its Motion Plaintiff asks the Court to stop Defendants from using the mark "Wild Willy's" in connection with their business. Although Plaintiff does not specify on which claim it asserts entitlement to injunctive relief, the Court assumes that the claim for preliminary

injunctive relief is based on the Lanham Act claims, 15 U.S.C. §§ 1114, 1125(a) (Counts I and III). Defendants oppose the granting of an injunction. After full consideration of the evidence presented in the record and the argumentation of the parties, the Court will deny Plaintiff's Motion for Preliminary Injunction.

## I. FACTS

James and Meredith Williams opened the Wild Willy's Burgers family-style restaurant in York, Maine in May of 2001. Declaration of James Williams ("Williams Dec.") ¶ 2. They have grown the business through word of mouth advertising based on the quality of the food and the personal service they provide to customers. *Id.* Branding has always been a critical part of the business plan for Wild Willy's Burgers. *Id.* ¶ 3. Over the first few years Mr. and Mrs. Williams worked six days a week to build the reputation of Wild Willy's Burgers. Williams Dec. ¶ 4. The restaurant has been recognized as an up and coming family restaurant. *Id.* ¶ 4, Ex. 1. Williams Dec. Ex. 1. To protect the investment in the Wild Willy's Burgers brand, Wild Willy's obtained a federal registration for the trademark "Wild Willy's Burgers" on August 5, 2003. Williams Dec. Ex. 2.

As Wild Willy's reputation grew, Mr. Williams saw potential for licensing the Wild Willy's Burgers trademark to others. Williams Dec. ¶ 7. Wild Willy's incorporated trademark licensing into its business plan and promoted licensing opportunities on its website www.wildwillysburgers.com. *Id.* In November, 2004, two additional Wild Willy's restaurants were opened by licensees, one store in Watertown, Massachusetts and another in Rochester, New Hampshire. *Id.* In exchange for licensing fees, such Wild Willy's licensees receive the right to use the "Wild Willy's Burgers" trademark in

connection with their restaurants subject to strict requirements intended to ensure that the licensees provide the same high quality environment that is associated with the Wild Willy's brand. *Id.* Wild Willy's retains the right and obligation to enforce and protect the trademarks. *Id.* Mr. Williams asserts that Wild Willy's Burgers newest store is scheduled to open sometime this fall in South Portland. Williams Dec. ¶ 8.

Sometime in March of 2006, Mr. Williams became aware that there was a restaurant in Acton, Maine operating under the name "Wild Willy's." Williams Dec. ¶ 9. After some investigation, Plaintiff learned that Defendant William Palladino ran the Acton, Maine restaurant, which was formerly known as "The Potting Shed" and is now called "the Shed." Affidavit of William Palladino (Docket Item No. 16). Mr. Palladino explains the establishment of "Wild Willy's Ale Room" as follows:

> At [The Shed], fellow officers of the corporation and I converted a former function room into a lounge. We made renovations to make the facility comply with local and state regulations. We spent a considerable amount of money to make the conversion. We called the bar "Wild Willy's Aleroom at the Shed."

Palladino Aff. Mr. Williams spoke to Defendant Palladino several times on the telephone, notifying him of Wild Willy's Burgers federally registered trademark rights. Williams Dec. ¶ 10. On April 3, 2006, counsel for Wild Willy's sent a registered letter to Defendants, through their legal counsel, requesting them to immediately cease use of the "Wild Willy's name or any similar name or mark in connection with restaurant services." *Id.* ¶ 12; Amended Complaint Ex. 5.

## II. DISCUSSION

The well-known requirements for obtaining preliminary injunctive relief are: (i) a likelihood of success on the merits; (ii) irreparable injury to Plaintiff absent injunctive

3

relief; (iii) the balance of equities for and against an injunction; and (iv) any harm to the public interest.  *See, e.g., Narragansett Indian Tribe v. Warwick Sewer Authority*, 334 F.3d 161, 166 (1st Cir. 2003) (citing *Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 151 (1st Cir.1998)); *I.P. Lund Trading ApS v. Kohier Co.*, 163 F.3d 27, 33 (1st Cir. 1998).

### A. Likelihood of Success on the Merits

The Lanham Act protects both the public and the owner of a trademark by "prevent[ing] the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service." *Star Fin. Servs., Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996) (citing *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992)); *see also I.P. Lund Trading ApS*, 163 F.3d at 36.  Wild Willy's must prove three elements: (1) that it "uses and thereby 'owns', a mark"; (2) that Defendants are "using the same or a similar mark"; and (3) that Defendants' "use is likely to confuse the public, thereby harming the plaintiff." *Anheuser-Busch, Inc. v. Caught-On-Bleu, Inc.*, 288 F. Supp. 2d 105, 113-14 (D.N.H. 2003).  Likelihood of confusion is the "key question" for both of Plaintiff's Lanham Act claims.  *Compare* 15 U.S.C. § 1125(a)(1) (defining unfair competition as use of "any word, term, name, symbol, or device, . . . likely to cause confusion" ) *with* 15 U.S.C. § 1114(1) (defining trademark infringement as "use . . . of any reproduction, counterfeit, copy, or colorable imitation of a registered mark  . . . likely to cause confusion" ).

### a. User of the Mark

Trademark rights are created by use.  2 McCarthy on Trademarks §16:4 (4th ed.). A qualifying "use" is a sale of a product or service in commerce under the mark. *Id.* Wild Willy's Burgers family-style restaurant was opened in May 2001 by Meredith and

James Williams in York, Maine. Williams Dec. ¶ 1. Since that time Wild Willy's Burgers has been selling products and services in commerce under the mark Wild Willy's. Williams Dec. ¶ 2. On August 5, 2003, a Certificate of Registration was issued by the U.S. Patent and Trademark Office for the mark "Wild Willy's Burgers." Williams Dec. Ex. 2. In November 2004 Wild Willy's Burgers opened restaurants in Watertown, Massachusetts and Rochester, New Hampshire under trademark licenses. Williams Dec. ¶ 7. Defendant William Palladino operates a restaurant in Acton, Maine, which was formerly known as "The Potting Shed" and is now called "the Shed." Palladino Aff. Although Mr. Palladino fails to put the establishment of Wild Willy's Ale Room in any timeframe, he does not challenge Plaintiffs' contention that Wild Willy's Ale Room was established sometime after Wild Willy's Burgers in May 2001.

### b. Likelihood of Confusion

"The likelihood of confusion inquiry centers on whether members of the purchasing public are likely to mistake defendant's products for plaintiff's protected products within the same category." *Anheuser-Busch*, 288 F. Supp. 2d at 114. The factors courts consider when asked to determine the "likelihood of confusion" in a trademark case are: (1) the similarity of the marks; (2) the similarity of goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of plaintiff's mark. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987). No singular factor is determinative, rather all factors must be evaluated in context and any meaningful inquiry into the likelihood of confusion necessary must

replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark.  *Id.*

### i. Similarity of the Mark

Similarity between Plaintiff's and Defendants' marks is tested on three levels: sound, sight and meaning.  *Id.*  There is no dispute that Defendants use of mark "Wild Willy's" or "Wild Willie's" sounds identical to Plaintiff's use of "Wild Willy's."  Williams Dec. Ex. 3.  With respect to the sight of the mark, Plaintiff appears to regularly use a unique wavy line or squiggly bold typeface to identify and advertise the business.  Williams Ex. 6.  The exhibit exemplifying Plaintiff's squiggly bold typeface was presented to the Court in black and white, so presumably there are no distinctive colors incorporated in Plaintiff's design.  The record does not establish that Defendants customarily employ any singular, distinctive typeface or logo when publishing or advertising Wild Willy's Ale Room.  *See* Williams Ex. 3 (multiple advertising materials from Wild Willy's Ale Room including unidentified advertisement, web pages, and two different rode side signs) and Williams Ex. 5 (newspaper advertisement with a western theme).

Plaintiff points out that on one occasion an advertisement in the Sanford News for Wild Willy's Ale Room used the same squiggly typeface in the words "Wild Willy's" as used by Plaintiff for identifying and advertising the Wild Willy's Burgers business.  Williams Dec. Ex. 5 (August 3, 2006 ad in the Sanford News).  Defendant Palladino explains the Sanford News advertisement as follows: "At one time I called the Sanford News to place an ad for our entertainment.  The newspaper art department used the logo for Wild Willy's Burgers, without my prior approval.  I immediately called the

newspaper and changed it, and I never authorized or intended to use this logo." Palladino Aff. There is no evidence that the use of Plaintiff's unique typeface occurred on any other occasion either before or since August 3, 2006. Indeed, it does not appear from the Court's review of the record that Defendants use any logo to publicize Wild Willy's Ale Room. All of the other Wild Willy's Ale Room advertisements and signs included in the record employ designs different from Plaintiff's squiggly typeface.

Other than both parties attempt to promote a generic western theme in their businesses, there is no argument presented on the meaning of Wild Willy's. The Court notes, however, that the names of the principals of both establishments include some form of William, which is the derivative source of "Willy"– James Williams and William Palladino. Palladino Aff. (Defendant Palladino states that "[s]ince my name is William, I thought it would be appropriate to use it in the name of the bar.")

On this record, the Court finds that the identity in the sound of the name is sufficient to favor a finding of likelihood of confusion on the similarity of the mark.

### ii. Similarity of Goods

With respect to the second factor, the record indicates that the businesses are considerably distinct – Plaintiff operates a family-style restaurant and Defendants a lounge or bar. Palladino Aff. Although the businesses "need not be identical to engender confusion," the record here is far from establishing a similarity in the type of businesses and the goods marketed for sale. *Anheuser-Busch*, 288 F. Supp. 2d at 118. From the Plaintiff's menu and one of Defendants' advertisements it appears that both businesses sell food and beer, however, it is not clear whether Defendants' "pub menu" actually includes any of the food items that Wild Willy's Burgers sells. *See* Williams

Dec. Ex. 3 (Wild Willy's Ale Room advertisement); Williams Dec. Ex. 6 (Wild Willy's Burgers menu). In addition, the general focus of a lounge or bar operation is significantly different than that of a family-style restaurant. For example, Defendants advertisements highlight the presence of a pool table, darts and live music every night of the week. Williams Ex. 3.

### iii. The Relationship Between the Parties' Channels of Trade and The Relationship Between the Parties' Advertising

The third and fourth factors do not favor a finding of a likelihood of confusion. As a general rule, "convergent marketing channels increase the likelihood of confusion." *M2 Software v. Madacy Entertainment*, 421 F.3d 1073, 1083 (9th Cir. 2005)(quoting *Nutri/System, Inc. v. Con-Stan Indus., Inc*., 809 F.2d 601, 606 (9th Cir.1987)); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979). The record in this case, however, does not disclose that there is a relationship between the parties advertising or channels of trade. By the Court's calculation Defendants' Acton, Maine business is located approximately forty miles from Plaintiff's York, Maine location, approximately twenty miles from Plaintiff's Rochester, New Hampshire location, and approximately 100 miles from Plaintiff's Watertown, Massachusetts location. Although the close physical proximity of the businesses would tend to increase the likelihood of confusion, based on the parties submissions the Court is unable to determine what the primary marketing and advertising channels are for either business. Both businesses have websites and use the internet to advertise. Plaintiff has included in the record favorable reviews of all three Wild Willy's Burgers locations from various local newspapers, regional magazines or websites. Williams Dec. Ex. 1. Other than both businesses advertising in the Sanford

News on one occasion, the record does not disclose what advertising channels are employed by either business.

### iv. Classes of Prospective Purchasers

With respect to the fifth factor – the classes of prospective purchasers – the Court is left to determine what record evidence may be relevant to this factor. Although there may be some common characteristics in the general customer base looking for food and spirits in York County, Maine, the Court is not satisfied that the potential customers of these businesses would have significant common ground. Specifically, the focus of Defendants' lounge business seems inconsistent with the family-style restaurant image being promoted by Wild Willy's Burgers and would not appear to create a high percentage of customer overlap.

### v. Evidence of Actual Confusion

The sixth factor – evidence of actual confusion – is not established in this record. Plaintiff has included in the record the text of three e-mails it received from customers to establish that Defendants' advertising is reaching Plaintiff's customers and has caused actual confusion. Williams Dec. Ex. 4. The e-mails from the unidentified individuals are not made under oath. As out of court statements offered as proof of the matter they assert, the e-mails are inadmissible hearsay, which the Court cannot consider in determining whether there is a likelihood of confusion let alone to establish that there has been actual confusion. *See* Fed. R. Evid. 801(c) and 802.

### vi. Defendant's Intent in Adopting its Mark

The seventh factor is the Defendants' intent in adopting the mark. This factor spotlights whether Defendants have tried to take advantage of Plaintiff's "good will,

reputation and market recognition or whether it was simply using its own name without such intent." *Best Flavors v. Mystic River Brewing Co.,* 886 F. Supp. 908, 917 (D. Me. 1995). Plaintiff suggests that Defendants' motives in adopting and continuing to use the Wild Willy's name should be questioned because it knew of Wild Willy's prior use and federal registration and yet refused to stop. Plaintiff contends that Defendants' bad intent is further exemplified by the evidence that Defendants copied the typeface of Wild Willy's Burgers in an advertisement after receiving written notice of Wild Willy's federally registered trademark rights and after being sued in federal court for trademark infringement. *See* Williams Dec. Exs. 5 and 6. The Court disagrees. Other than the singular advertisement copying Wild Willy's Burgers typeface, which Defendant Palladino claims was a mistake of a third party and not authorized by him, there is no evidence that Defendants have copied the color scheme, lettering or logo used by Wild Willy's Burgers. The potential negative inference from this singular instance fails to satisfy the Court that Defendants have attempted to trade on the good will of Plaintiff's mark.

### vii. Strength of Plaintiff's Mark

The final factor is the strength of Plaintiff's mark. The distinctiveness of the trademark determines its relative strength. *See Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 32 (1st Cir. 1989) (factors useful in assessing strength of the mark include examining duration of use, extent of promotion and by "looking at the number of similar registered marks"). Plaintiff argues that the strength of Wild Willy's Burgers mark is reflected in the record by the favorable reviews it has received from restaurant critics, the success of its restaurants, and the effective licensing of the trademark. The mark has

been in use for approximately five years and the record includes favorable reviews from restaurant critics regarding the quality of the food and services offered by each location of Wild Willy's Burgers. The significance of the mark is also supported by the successful licensing of the family-style restaurant. This factor favors a finding of likelihood of confusion.

### III. CONCLUSION

Considering the numerous factors that in determining whether there is a likelihood of confusion between marks, the Court finds that on this record there is little likelihood of confusion. Plaintiff's failure of proof on this element of the test makes it unnecessary for the Court to consider the other factors in the preliminary injunctive relief analysis.

Accordingly, the Court **ORDERS** that Plaintiff's Motion for Preliminary Injunction be, and it is hereby, **DENIED.**

/s/ Gene Carter
Gene Carter
Senior District Court Judge

Dated at Portland, Maine this 28th day of November, 2006.